IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DUANE K. BARBER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 09-CV-226-TLW |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Plaintiff Duane Barber seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1382. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 8].

Plaintiff protectively filed his application for SSI on February 4, 2005. [R. 12, 49]. Although plaintiff alleged an onset date of January 12, 2004, the earliest date of plaintiff's eligibility for SSI benefits is his application date. [R. 12]. The relevant adjudicated period is from the application date to the date of the ALJ's decision, that is, February 4, 2005 through May 5, 2008. [R. 19]. This is plaintiff's second application for benefits. His first application was approved, and he received SSI from 1992 to 1997, at which time his benefits were terminated. [R. 164].

The ALJ conducted a hearing on February 20, 2008. [R. 162]. Following entry of the ALJ's decision denying benefits, the Appeals Council denied plaintiff's request for review on February 19, 2009. [R. 5]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481. On April 15, 2009, plaintiff filed the subject action with this Court. [Dkt. # 1].

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is only to determine whether substantial evidence supports that decision and whether the applicable legal standards were applied correctly. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

A claimant for disability benefits bears the burden of proving that he is disabled. 42 U.S.C. § 423 (d)(5); 20 C.F.R. § 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of his impairment during the relevant adjudicated period. 20 C.F.R. § 416.912(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques" administered by "acceptable medical sources" such as licensed and certified psychologists and physicians. 42 U.S.C.§ 423 (d)(3), and 20 C.F.R. § 416.913.

On appeal, plaintiff asserts the ALJ failed to (1) properly consider the medical source evidence, (2) perform a proper step 5 determination, and (3) perform a proper credibility

determination. [Dkt. # 15 at 2].

## Background

Plaintiff is a Hispanic male. He was born on January 12, 1986, and was 19 years old at the time of filing his second SSI application. [R. 42, 87]. Plaintiff attended school in Grove, Oklahoma, completing the 9th grade. [R. 168]. He has never married. [R. 106]. He lives with his mother, stepfather, stepbrother, sister-in-law, and 3 year old nephew. [R. 106]. His mother has a history of depression, anxiety, and learning disorders. [R. 106]. Plaintiff has problems with anger management dating back to age 14. [R. 87]. In 2004, plaintiff had a "violent outburst and beat" and "hurt somebody" with a crow bar. [R. 174]. He was convicted of aggravated assault and battery and was incarcerated from March 2006 through April 2007. [R.14, 107]. Plaintiff has limited work experience. He was employed by Subway Sandwich Shop for 3-weeks and terminated when he had an altercation with a co-worker. [R 107, 169]. He was employed by Red Earth Construction for three and a half years, doing drywall, handyman, and landscape work. [R. 107, 168]. He was terminated after arguing with and threatening his boss. [R. 172]. Plaintiff is applying for SSI disability alleging attention-deficit-hyperactivity disorder (ADHD), depression, low self-esteem, feelings of worthlessness, poor memory, dependency, insomnia, paranoia, and nightmares. [R. 105]. At the time of the hearing, plaintiff was receiving anger management counseling from Dr. Kay Miller with Solutions Counseling in Grove, as a condition of probation following his incarceration. [R. 176].

The ALJ found that plaintiff has not engaged in gainful activity since February 4, 2005. Plaintiff worked for seven months, on a part time basis, ending January, 2008 making $7.00 per hour. However, the ALJ determined that this employment was at a level below substantial gainful activity as defined under the regulations. [R. 14]. The ALJ determined plaintiff's severe

impairment to be antisocial behavior. [R. 14]. The ALJ found that plaintiff's impairments, in combination, did not meet or medically equal the listed impairments, specifically listing 12.05 (Mental Retardation) and listing 12.08 (Personality Disorders). [R. 23]. The ALJ determined plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels; but limited to simple, repetitive work, in a habitual and object oriented setting, with no intense interpersonal contact with co-workers or supervisors and no public contact. [R. 16]. He determined plaintiff has mild restriction in daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and had experienced no episodes of decompensation. [R. 15].

The ALJ found plaintiff's testimony less than credible regarding limitations in his daily activities and the extent of his psychological disorders. [R. 24-25]. The ALJ determined that plaintiff is not capable of returning to his past work as a construction worker because it required close contact with coworkers and supervisors. [R. 18]. Based on his findings, his RFC and the testimony of the vocational expert, the ALJ concluded that plaintiff was capable of performing the following medium exertional level occupational work: janitor, dishwasher and hand packer. The ALJ also found that job opportunities in these fields exist in significant numbers in the regional and national economy. Thus, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. [R. 19]. This finding was made at step five in the five step inquiry outlined in <u>Williams v. Bowen</u>, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[1]

---

[1] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents them from engaging in their past employment, and (5) has an impairment which prevents them from engaging in any other work, considering their

## Discussion

As his first issue, in assessing plaintiff's RFC, plaintiff contends the ALJ erred in failing to rely on statements made by plaintiff's mother allegedly establishing "marked restrictions" in plaintiff's daily living and in failing to explain why he disbelieved her statements. [Dkt. # 15 at 3]. Contrary to plaintiff's assertion, in determining that plaintiff has mild restriction in daily living the ALJ did rely, in part, on statements made by plaintiff's mother:

> In the function report, completed by the claimant's mother in April, 2005, she stated that he does keep his room clean. He lives with his mother and step-father, and is given very little responsibility. He enjoys music, does go out a lot, talks to friends on phone, and goes to friends' houses (Exhibit 3E).

[R. 15]. Later in his decision, the ALJ discounted other statements of plaintiff's mother by observing that she intervened in his opportunity to receive necessary mental health treatment and influenced some of his inappropriate conduct at an early age. The ALJ's findings impeach the judgment and credibility of plaintiff's mother. The ALJ found:.

> The claimant was hospitalized in October, 2000 because he had trouble controlling his temper. The problems identified were anger control, impulse control, depression, and eating disorder. The claimant's mother intervened in his hospital care. After one week, she stated that he had learned his lesson and was able to control his anger. It was also noted that the claimant had been forcing himself to vomit, which he denied. The claimant's step-father did not agree with the mother's decision. He was discharged against medical advice (Exhibit 1F). On November 19, 2004, the claimant went into Hopper Medical Clinic with his girlfriend and best friend. He stated that he was not depressed just angry and said that he wanted to try valium. He said that his mother told him to ask for valium. He became quite angry and Dr. Hopper dismissed him from his clinic due to his aggressive, drug seeking behavior. (Exhibit 3F).

[R. 17]. Thus, the Count finds that the ALJ provided an adequate explanation for his decision

---

age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52).

limiting his reliance on the opinions of plaintiff's mother.

Plaintiff claims the ALJ erred in not adopting in its entirety the opinion of the state agency physician, Cynthia Kampschaefer, that plaintiff had moderate restriction in daily living activities and one or more episodes of decompensation. [Dkt. # 15 at 3 and R. 113].

As stated above, the ALJ relied on specific evidence to support his determination that plaintiff has mild, rather than, moderate restrictions in daily living. He found that plaintiff's altercation in prison was a not a decompensation because plaintiff "did respond well to the medications." [R. 15]. The ALJ further found that plaintiff's hospital stay in 2000 was not a relevant episode of decompensation, because it occurred five years prior to the adjudicated period.[2]

The ALJ accepted Dr. Kampschaefer's assessment that plaintiff has moderate restrictions in social functioning and in concentration, persistence or pace; and her conclusion that plaintiff's severe impairment is "antisocial behavior." Even though the ALJ rejected Dr. Kampschaefer's opinion of moderate restrictions in daily living and episodes of decompensation, the ALJ did adopt her ultimate conclusion that plaintiff "can do simple tasks only" and "can only relate on a superficial and incidental basis, due to authority and aggression problems" by including her work restrictions in his RFC assessment, specifically that plaintiff is able to do "simple, repetitive work in a habitual and object oriented setting" and is "not able to have intense interpersonal contact with co-workers or supervisors and can have no public contact." [R. 16]. Thus, the Court finds no error in the ALJ's analysis of the medical source evidence provided by Dr. Kampschaefer.

---

[2] An episode of decompensation is defined as: "exacerbation or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." Listed Impairments 12.00(C)(4). The episodes are of extended duration when they last at least two weeks. Id.

Plaintiff claims the ALJ erred in failing to consider his conviction for assault and battery as an episode of decompensation; and his anger, hostility, and vulgar language toward his physicians and employers as "marked restriction" in social functioning. The ALJ acknowledged that plaintiff has "problems with authority and controlling his anger." However, he discounted his emotional outburst by relying on evidence that "[h]is condition does improve with the use of proper medication." [R. 18]. In addition, the Tenth Circuit has held that: "[o]ne cannot establish entitlement to disability benefits by proving that he has committed antisocial crimes resulting in his incarceration in prison." Kelbach v. Harris, 634 F.2d 1304, 1313 (10th Cir. 1980). The ALJ noted that his RFC assessment was supported by the psychological consultative evaluation by Denise LaGrand, Psy.D. He stated:

> She opines that his ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers is estimated to be low average. (Exhibit 4F). It is also supported by the records from the Oklahoma Department of Corrections. The claimant was incarcerated from March, 2006 through April, 2006. In the beginning, he had some conflict, but after a while, he was able to calm down with the use of medications (Exhibit 8F).

[R. 18]. The ALJ pointed out that plaintiff's ability to work is shown by his recent work activity. "The claimant testified that he worked three years off and on for Red Earth Construction. He also worked for seven months doing stucco work which ended in January, 2008." In a case involving similar allegations of inability to work due to antisocial behavior and anger-management problems, the Tenth Circuit concurred with the following conclusions reached by the ALJ, which are applicable to the instant case as well:

> It is clear from this record that much of [plaintiff's] symptomatology consists of anger and explosive outbursts associated with an inability to control her emotions. While it is true that anger can interfere significantly with work, at the same time this is ultimately a problem of attitude and emotion. There is nothing in the record which

would suggest that [plaintiff's] condition is not responsive to control through counseling, medication, and self-discipline, or that it has ever resulted in a degree of limitation as to be considered disabling under the Social Security Act. The record generally shows that [plaintiff's] mental impairments are responsive to medication, counseling and changes in [her] life circumstances. The record likewise describes her treatment regimen as effective and helpful. Any finding of disability on the basis of [plaintiff's] alleged mental impairments would fly in the face of the record as a whole and the Social Security Act and Regulations.

<u>Palmer v. Health and Human Services</u>, 50 Fed. Appx. 957, 962 (10th Cir. 2002) (unpublished).[3]

Plaintiff then criticizes the ALJ for relying on Dr. LaGrand's report, claiming that it is insufficient, because it does not contain a final diagnosis as purportedly required under 20 CFR § 416.919n(c)(4). The Court finds no merit to this argument. This regulatory subsection also provides:

> *When a complete consultative examination is not required.* When the evidence we need does not require a complete consultative examination (for example, we need only a specific laboratory test result to complete the record), we may not require a report containing all of the elements in paragraph (c).

20 CFR § 416.919n(d). As previously stated, the record also contains a separate report from Dr. Kampschaefer, another state agency medical consultant. Her report diagnosed plaintiff with antisocial behavior. Thus, a second diagnosis was not necessary to have a complete record.

As his second issue, plaintiff claims the ALJ propounded a faulty hypothetical question to the vocational expert because the ALJ: (1) failed to include all of the impairments documented in the record, (2) included all exertional levels limited by "no public contact," and (3) failed to include plaintiff's inability to get along with coworkers. [Dkt. # 15 at 6].

The ALJ hypothetical question to the vocational expert follows:

Q. Now I need you to assume a 22-year-old individual with limited education,

---

[3] Unpublished decisions are not precedential, but may be cited for their persuasive value. <u>See</u> Fed. R. App. 32.1: 10th Cir. R. 32.1.

>   work experience as outlined by yourself and your, through your report and testimony today. In the first hypothetical, I would like you to limit him to doing simple repetitive tasks in a habitual work setting, which is also object oriented, with no intense interpersonal contact with coworkers or supervisors, and no public contact. Based upon that hypothetical, could the hypothetical individual do any of the, or could he do the Claimant's past relevant work?
>
> A.   No, Your Honor.
>
> . . . .
>
> Q.   Okay. And are there any other jobs that the individual could do in the regional or national environment?
>
> A.   Yes, Your Honor, at the medium unskilled level there's the job of janitor . . . .There's also the job of a dishwasher. . . There's also the job of a hand packer.

[R. 185-186]. Plaintiff is correct that hypothetical questions must reflect with precision all of plaintiff's impairments. However, they need only reflect impairments and limitations that are borne out of the evidentiary record. Evans v. Charter, 55 F.3d 530, 532 (10th Cir. 1995). The Court finds that the work restrictions contained in the ALJ's hypothetical question reflect and account for the impairments and limitations that are borne out by the evidence. As previously stated, the inclusion of the limitations for "doing simple repetitive tasks in a habitual work setting, which is also object oriented, with no intense interpersonal contact with coworkers or supervisors, and no public contact" are sufficient limitations under the evidence to account for plaintiff's anger management problems and antisocial behavior. The hypothetical question propounded to the vocational expert was also consistent with the ALJ's findings as to plaintiff's RFC. "The ALJ is only required to ask hypotheticals encompassing impairments that find support in the record." See Jordan v. Heckler, 835 F.2d 1314, 1317 (10th Cir. 1987). In this instance, the ALJ found that plaintiff's mental impairments did not meet the listing agreements, and that he did not have two or more marked

limitations nor one or more episodes of decompensation, and the ALJ cited evidence to support his conclusions. Thus, the Court finds no error in the ALJ's hypothetical question to the vocational expert.

Plaintiff faults the ALJ, claiming that he failed to explain "how a person is supposed to work with 'no public contact' unless his [sic] is in a room by himself." [Dkt. # 15 at 7]. Plaintiff has offered no legal authority for his assertion that the inability to work in contact with the general public would preclude all gainful activity. In assessing plaintiff's mental RFC, the ALJ is to consider plaintiff's ability to function in a work environment, which may not necessitate a public forum. The ALJ properly considered plaintiff's emotional and behavior problems and restricted his work environment to accommodate those limitations. In addition, although Dr. Kampschaefer found that plaintiff had 3 areas of markedly limited functional capacity, she also found 14 related areas of mental functioning in which the plaintiff was "not significantly limited" and only 2 areas of "moderate limitations." In light of this evidence, the work restrictions imposed by the ALJ are supported by substantial evidence in the record and support his conclusion that plaintiff is not disabled.

As her third issue of error, plaintiff claims the ALJ failed to perform a proper credibility determination. [Dkt. # 15 at 7]. The Court disagrees. The ALJ linked his credibility findings to the evidence of record. In terms of plaintiff's alleged problems sleeping, the ALJ found that with medication, the plaintiff was sleeping much better. [R. 17]. As to his claim that he had low energy and was not eating properly, the ALJ found that in July and August 2006, plaintiff reported that he had good energy and ate well. [R. 17]. In response to his complaints of depression, the ALJ found that at the time he was released from prison the Department of Corrections reported that plaintiff was

stable when he was on medication. [R. 17]. In regard to his alleged panic attacks, Dr. Darrell Mease, his treating physician, reported on March 24, 2008, that plaintiff did not have "true panic attacks," rather he was experiencing "generalized anxiety." [R. 17, 158].

Thus, the Court finds that the ALJ linked his credibility determination to supporting evidence. He thoroughly explained his credibility determination, citing inconsistencies between plaintiff's testimony, statements from others and his own prior statements. In Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995), the court held the ALJ's credibility determination was inadequate because the ALJ simply recited the general factors he considered and then said the plaintiff was not credible based on those factors. The court explained that the ALJ must refer to the specific evidence he is relying on in determining credibility and link his credibility findings to specific evidence. Id. at 391. In the instant case, the ALJ complied with this standard. In Qualls v. Apfel, 206 F.3d 1368 (10th Cir. 2000), the court stated that "our opinion in Kepler does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied." Id. at 1372. Credibility determinations are peculiarly the province of the finder of fact, and a court should affirm that finding if it is closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Hill v. Astrue, 289 Fed. Appx. 289, 294 (10th Cir. 2008) (unpublished). The evidence relied upon by the ALJ clearly shows that plaintiff's testimony is not entirely credible, and this finding is supported by substantial evidence. Plaintiff fails to cite conclusive medical evidence which contradicts the ALJ's assessment of plaintiff's credibility. Plaintiff's argument addresses the weight rather than the sufficiency of the evidence.

## **Conclusion**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and that the correct legal standards were applied. Thus, the Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

SO ORDERED this 20th day of August, 2010.

_____
T. Lane Wilson
United States Magistrate Judge